IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jessie Cantrell, as personal Representative of the Est. of Cory Cantrell, | : : : : | |
| Plaintiff, | : : | Case No. 1:22-cv-00739 |
| vs. | : : | Judge Douglas R. Cole |
| Scioto County, Ohio et. al., | : : : | Magistrate Judge Silvain |
| Defendants. | : : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment is long on facts and short on law. Plaintiff has the burden of proving that Defendants violated clearly established law, yet Plaintiff does not cite any cases with similar facts to this one. Example: Plaintiff does not cite any case finding a constitutional violation for the failure to administer Narcan while officers are providing other lifesaving measures. In addition, Plaintiff misstates facts and relies on inadmissible evidence to try to manufacture a material issue of fact. For the additional reasons that follow below, all Defendants are entitled to summary judgment.

**I.      INADMISSABLE FACTS AND MISSTATEMENTS OF FACT**

    **A.      THE STATEMENTS OF GARY WATSON AND DEVIN KRITZWISER ARE INADMISSIBLE HEARSAY**

In her Opposition, Plaintiff relies on the written and recorded statements of Gary Watson and Devin Kritzwiser. (See Resp. in Opp., Doc. 79, PageID # 2334, 2336). Watson and Kritzwiser were cellmates with Cory Cantrell on the date of the incident. Those statements are hearsay. That is, those statements are unsworn out of court statements offered for the truth of the matter asserted.

1

"A party seeking or opposing summary judgment may rely on deposition transcripts, electronically stored documents, affidavits, declarations, and other materials." *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 U.S. Dist. LEXIS 180335, 2016 WL 7492503, at *6 (N.D. Ohio Dec. 30, 2016) (citing Fed. R. Civ. P. 56(c)(1)(A)). "It is well settled[, however,] that a court may not consider hearsay when deciding a summary judgment motion." *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) (unsworn witness statements taken during a police investigation were properly excluded from consideration on summary judgment). In *Beans*, the Court held that a civil rights plaintiff could not rely on unsworn interview transcripts to defeat summary judgment because they were hearsay that did not otherwise qualify as a deposition transcript, electronically stored documents, affidavits, declarations, or other material that the Court may properly consider under Rule 56. *Beans*, 2016 U.S. Dist. LEXIS 180335, 2016 WL 7492503, at *7.

A similar result is warranted here. The statements contained in the written and recorded interviews are unsworn and therefore inadmissible[1]. *See, e.g., Purdy v. Newland*, No. 93-2110, 1994 U.S. App. LEXIS 30817, 1994 WL 601341, at *1 n.1 (6th Cir. Nov. 2, 2010) (transcript of private investigator's unsworn interviews could not be considered on summary judgment); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment."). Moreover, the fact that the unsworn statements were produced during discovery does not cure the fact that they contain inadmissible hearsay. *See Pollino v. City of Phila.*, No. Civ. A. 03-6288, 2005 U.S. Dist. LEXIS 2210, 2005 WL 372105, at *7 (E.D. Pa. Feb. 15, 2005) ("The unsworn statements alleged

---

[1] Plaintiff could have sought declarations/affidavits from the inmates or deposed them. It is unclear why Plaintiff did not. However, as discussed *infra*, even if this Court chooses to consider the statements of Watson and Kritzwiser, the statements do not vitiate qualified immunity for any Defendant.

2

to be incorporated by reference in the interrogatory answer are clearly nothing more than hearsay that would not be admitted at trial for substantive purposes" and "is not considered when reviewing a motion for summary judgment."). Accordingly, the Court should not consider Watson and Kritzwiser's hearsay statements.

### B. MISSTATEMENTS OF FACT

Some of these misstatements by Plaintiff are less material than others, but all deserve to be corrected:

- Misstatement: "Three days later, on April 14, 2022, at 1:15 a.m., Cory threw himself an estimated 25 feet from the "top range" of the two-story cell block where he was housed." (Resp. in Opp., Doc. 79, PageID # 2330)

  What the record reflects: Cory did not "throw" himself of anything. He hung down from the railing and dropped to the floor. There is no evidence of the distance being "25 feet." (Roberts Decl., Doc. 64-7, ¶ 62-63, PageID # 310; Roberts Depo., Doc. 76, PageID # 2150). Cantrell stated that this was not a suicide attempt, but rather, he just wanted to find a way to get out of the jail. (*Id*.)

- Misstatement: "The only reason inmates are housed in the booking area for any significant length of time is for "medical observation or suicide watch." (Resp. in Opp., Doc. 79, PageID # 2331)

  What the record reflects: It is true that those were the only reasons Officer Boggs could think of in his deposition. But Captain Roberts specifically explained why Cantrell was housed in the booking area and it was not for medical observation or suicide watch: "I made the decision to house Mr. Cantrell in the booking area from that point [the point where Cantrell dropped from the second floor] forward because there is no other area in the jail that is not multi-tiered." (Roberts Decl., Doc. 64-7, ¶ 65, PageID # 310). Unless the inmate is on suicide watch, inmates housed in the booking area are to be checked on every 60 minutes just like inmates in general population. (Roberts Depo., Doc. 76, PageID # 2113, 2152).

- Misstatement: Cory Cantrell was on suicide watch on June 18, 2022 and subject to 10 minute checks and, even if he was not, his cellmate Gary Watson was on suicide watch so officers should have been checking on him every 10 minutes. (Resp. in Opp., Doc. 79, PageID # 2331, n.2)

  What the record reflects: This is a blatant misstatement of fact. The last time that Cory Cantrell was on suicide watch was on June 10, 2022. He was evaluated by mental health professionals and their recommendation was to "remove client from suicide watch."

3

(Roberts Decl., Doc. 64-7, Exhibit R, PageID # 731-734). Cantrell was not on suicide watch on June 18, 2022. Gary Watson was not on suicide watch on June 18, 2022 either. Watson *was* on suicide watch three weeks earlier and removed from suicide watch on May 31, 2022. (Supp. Decl. of Damon Roberts, Doc. 81-2, ¶ 9, Exhibits B and C, PageID # 2375, 2393-94).

The only person on suicide watch on June 18, 2022 was Tyler Darby in Holding Cell # 2. (*Id*. at ¶ 10, Exhibits D and E, PageID # 2375, 2395-96). Officer Boggs recorded appropriate suicide checks for that inmate. (*Id*.). There was no reason for any officer to do 10-minute checks on Holding Cell 5—Cory Cantrell's cell. (*Id*.)

- Misstatement: Jail staff must conduct observations at least once every 20 minutes. (Resp. in Opp., Doc. 79, PageID # 2332)

What the record reflects: This assertion lacks context. The policy entitled "Inmate Observation Checks" specifically states that "The booking officer will perform observation checks of each inmate in the holding cell at least every sixty (60) minutes." (Roberts Decl., Exhibit D, Doc. 64-7, PageID # 355). The "Staffing" policy at the time stated that inmates in the holding cells should be checked every 20 minutes. (Staffing Policy, Doc. 76-1, PageID # 2314). Ohio regulations require observation checks every 60 minutes. O.A.C. § 5120:1-8-03(B)(7). The practice at the Scioto County Jail was to do observation checks every 60 minutes consistent with Ohio regulations. (Roberts Depo., Doc. 76, PageID # 2211).

- Misstatement: Perry Steele's body scan was of low quality and was "useless." (Resp. in Opp., Doc. 79, PageID # 2332)

What the record reflects: This assertion is just untrue. Perry Steele's body scan on June 18, 2022 was of very good quality. (Roberts Supp. Decl., Doc. 81-2, ¶ 4, PageID # 2374). The problem is that Defendants cannot reproduce the scan on computers that lack the body scanner software. (*Id*. at ¶¶ 5-6, PageID # 2374). Plaintiff's counsel could have inspected the body scanner and viewed Mr. Steele's scan on the body scanner itself with the ability to view all of the images. Plaintiff's counsel failed to do that. (Declaration of Andrew Yosowitz, Doc. 81-1, ¶¶ 2-7, PageID # 2365-73, Exhibits A and B).

The additional images produced (Roberts Supp. Decl., Doc. 81-2, PageID # 2377-92) illustrate that Perry Steele's body scan was of good quality. And these are just a fraction of the thousands of images that could be produced. (*Id*. at ¶¶ 6-7, PageID # 2374-75).

4

II.     ADDITIONAL LAW AND ARGUMENT

   A.   **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CLAIM THAT THEY REFUSED "TO PROVIDE MEDICAL TREATMENT DURING THE FIRST HOUR-PLUS OF [CANTRELL'S] OVERDOSE"**

Plaintiff claims that Defendants Boggs, Marcum and McNeil ignored Cantrell's overdose for more than an hour. (Resp. in Opp., Doc. 79, PageID # 2338). One point before delving into the individual analysis that qualified immunity requires; Plaintiff repeatedly argues that Defendants (mainly Officer Boggs) failed to perform required observation checks. Even if this were true (which it is not), the failure to perform observation checks is not sufficient to establish deliberate indifference. *See e.g. Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022) (Officer entitled to qualified immunity even though he failed to conduct proper inmate checks every 30 minutes); *Howell v. NaphCare, Inc.*, 67 F.4th 302, 315 (6th Cir. 2023) (Nurse who failed to check on inmate every 15 minutes entitled to qualified immunity because failure to follow internal policies, without more, does not equal deliberate indifference); *Slone v. Lincoln Cnty.*, 242 F. Supp. 3d 579, 592 (E.D. Ky. 2017) (noting that "[f]ailure to provide 20-minute checks is not *prima facie* evidence of deliberate indifference." (citing *Bradley v. City of Ferndale*, 148 F. App'x 499, 507 (6th Cir. 2005)).

   1. **Officers Marcum and McNeil**

The evidence in the record is that Officers Marcum and McNeil is that neither of them (1) were assigned to the booking area on June 18, 2022 where Cantrell was housed nor did they (2) have any contact with Cantrell prior to Cantrell becoming unresponsive. (Marcum Decl., Doc. 64-5, ¶¶ 5-6, PageID # 295; McNeil Decl., Doc. 64-6, ¶ 4, PageID # 298).

Not so fast, says Plaintiff. Plaintiff argues that the video shows Marcum and McNeil in the booking area before the officers are alerted that Cantrell is unresponsive. At best, the video shows

5

that Officers Marcum and McNeil are present in the booking area for one minute before they respond to Cantrell's cell. Marcum was completing a report on the computer. (Marcum Decl., Doc. 64-5, ¶ 8, PageID # 296). There is no evidence that Officers Marcum and McNeil were present in the booking area for an hour before Cantrell went unresponsive. More importantly, there is no evidence that Officers Marcum or McNeil knew of any excessive risk to Cantrell's health or safety and then disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Lastly, even if the Court were to consider the hearsay statements of inmates Watson and Kritzwiser, neither of them mention Officers Marcum or McNeil. Accordingly, Officers Marcum and McNeil are entitled to qualified immunity on Plaintiff's claim that they failed to provide medical care to Cantrell prior to him becoming unresponsive.

    2. **Officer Boggs**

Plaintiff takes a number of swings at Officer Boggs, but they all miss. Officer Boggs has testified that, prior to the inmates banging on the door at approximately 10:02 p.m. on June 18, 2022, he did not notice any problems with Mr. Cantrell. (Boggs Decl., Doc. 64-3, ¶ 11, PageID # 277). Plaintiff resists that testimony by turning to the hearsay statements of inmates Watson and Kritzwiser. But even if those statements are credited, they do not show deliberate indifference.

Watson and Kritzwiser state that Perry Steele sold Cory Cantrell and Kritzwiser drugs. (Watson Interview, manually filed at 10:57 to 11:40; Kritzwiser Interview manually filed at 4:00-4:30). Watson says that, sometime before Perry Steele left, Officer Boggs checked on the inmates, and Officer Boggs asked Cantrell if he was okay. Cantrell responded that he was fine or all right. (*Watson* at 12:15 to 12:30; Kritzwiser at 6:10 to 6:18, 6:42 to 6:50). Kritzwiser said this occurred around "meds" aka medication pass which occurred around 7:00 p.m. (Kritzwiser at 6:30; Roberts

6

Decl., Doc. 64-7, Shift Logs, PageID # 365). Also, Kritzwiser says that Cory was not acting "fucked up" at this time. (Kritzwiser at 6:45 to 6:50).

Sometime after Perry Steele left, Cantrell did more drugs. (*Id*. at 13:00 to 13:10). Cantrell started turning blue. (*Id*. at 13:10 to 13:14). Did the inmates request assistance from the officers? Nope. They tried to take care of Cantrell themselves and hide any signs of distress from the officers. More specifically, Watson got Cantrell to lay down on his mat and he sat there with Cantrell while rubbing Cantrell's chest and putting a cold compress on him. (*Id*. at 13:15 to 14:00). Everything was fine according to Watson. This went on for 20 minutes. (*Id*. at 14:20 to 14:25). An officer checked on them between 8:00 and 9:30. (*Id*. at 14:45 to 14:56). Apparently, Kritzwiser had a wound that had opened up and Officer Boggs allowed Kritzwiser to clean that wound in the shower—hardly evidence of deliberate indifference. (*Id*. at 15:00 to 15:15). The inmates continued to try to care for Cantrell and "Cantrell was breathing okay." (*Id*. at 15:45 to 16:10). A short time later, stuff was coming out of Cantrell's nose and the inmates realized Cantrell was not breathing. Only at that time did they summon help. (*Id*. at 16:20 to 16:45; Kritzwiser Interview 5:30 to 5:55).

Inmates Watson and Kritzwiser do not help Plaintiff's case. If they are to be believed, Officer Boggs asked Cantrell if he was okay, and Cantrell said that he was. Cantrell's statement to Boggs that he [Cantrell] was okay cuts against any argument that Boggs subjectively drew an inference of a substantial risk to Cantrell. *Farmer*, 511 U.S. at 837. Even if one could argue that Boggs should have perceived a risk to Cantrell, it would still not be sufficient to overcome qualified immunity. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Plaintiff argues that Boggs and Ness (not a party) did not check on the

7

inmates, but Watson recalls at least two times that Boggs checked on them and the last check could have been up to 9:30 p.m. which would have been 30 minutes before Cantrell was unresponsive—well within the 60-minute interval required by jail policy and Ohio regulations. Watson also recalls Boggs assisting inmate Kritzwiser with a medical problem which also cuts against Plaintiff's claim that Boggs was ignoring medical issues.

Lastly, Plaintiff questions how Officer Boggs could have done an observation check just one minute before the inmates summoned assistance for Cantrell and not noticed that Cantrell was in distress. Watson provides the answer. The inmates were trying to cover up Cantrell's distress. According to Watson, the inmates laid Cantrell on his mat, used cold compresses, rubbed Cantrell's chest for twenty minutes while Cantrell was turning blue. The inmates acted like everything was fine. Only when Cantrell actually stopped breathing did they summon assistance.

The bottom line is this: whether or not the Court excludes the hearsay statements of inmates Watson and Kritzwiser, Officer Boggs is entitled to qualified immunity on any claim alleging that he was deliberately indifferent to Cory Cantrell's medical needs prior to Cantrell's unresponsiveness. The deliberate indifference standard, as provided in *Farmer* and applicable to this case requires conscious disregard of a known risk to inmate safety. Even with the statements of Watson and Kritzwiser, there is no evidence that Officer Boggs consciously disregarded a known risk to Cory Cantrell or even that he perceived a substantial risk to Cory Cantrell. Officer Boggs is entitled to qualified immunity.

### B.      PLAINTIFF'S NARCAN ADMINISTRATION CLAIM LACKS MERIT

Nobody could reasonably dispute that Officers Aldridge, Boggs, Davila, Marcum and McNeil tried to save Cantrell's life. After they were alerted that Cantrell was unresponsive, every single one of them performed CPR on Cantrell prior to the arrival of the paramedics. (See Aldridge

8

Decl., Doc. 64-2, ¶ 9, PageID # 299; Davila Decl., Doc. 64-4, ¶ 15, PageID # 293; Boggs Decl., Doc. 64-3, ¶ 10, PageID # 277); McNeil Decl., Doc. 64-6, PageID # 296; Marcum Decl., 64-5, PageID # 296, ¶ 17). They retrieved and applied an automated external defibrillator. (Boggs Decl., Doc. 64-3, PageID # 277, ¶¶ 8-9; Davila Decl., Doc. 64-4, PageID # 293, ¶ 16). They called for paramedics, and Sgt. Aldridge tried to get the paramedics to speed up their response. (Aldridge Decl., ¶ 11, PageID # 274).

Plaintiff argues that the officers should have administered Narcan. This is not a case in which the officers failed to provide any care at all. On the contrary, they provided lifesaving care. In *Rhinehart v. Scutt*, 509 F. App'x 510 (6th Cir. 2013), the Sixth Circuit held that "[n]either negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim." *Id.* at 513 (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Plaintiff's argument that the officers should have administered Narcan amounts to a mere disagreement over medical judgment. Incidentally, the paramedics did not feel the need to administer Narcan to Mr. Cantrell either. (See Cantrell Paramedic Records, Doc. 81-3, PageID # 2397-2402).

Next, all parties agree that Narcan is not effective in treating cardiac arrest. (Resp. in Opp., Doc. 79, PageID # 2343). Plaintiff's expert questions whether Cantrell was actually in cardiac arrest. Whether Cantrell was or was not in true cardiac arrest misses the point. The Defendants believed that he was in cardiac arrest. Recall that Officer Boggs was a former paramedic. (Boggs Decl., Doc. 64-3, ¶ 12, PageID # 277). He knows how to feel for a pulse and when he checked Cantrell, he did not feel a pulse. (*Id*. at ¶ 6-7, PageID # 276-77). The Defendants had objective evidence that Cantrell was in cardiac arrest and, subjectively, they believed he was in cardiac arrest.

9

Lastly, and most importantly, the officers did not violate clearly established law. The plaintiff bears the burden of showing that the right was clearly established. *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021). And to do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered. *Id*. at 766. Except in an "obvious" circumstance, it's not enough for a plaintiff to offer cases that merely stand for the "general proposition" that the Eighth Amendment bars deliberate indifference to medical needs. Here, Plaintiff has failed to cite any case from any federal court finding a constitutional violation for the failure to administer Narcan. And the circumstances here are even more specific than that. Plaintiff has failed to cite any case finding a constitutional violation for the failure to administer Narcan while officers are engaged in other lifesaving measures. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017)); *see also Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) ("[P]re-existing law must dictate, that is, truly compel . . . the conclusion . . . that what defendant is doing violates federal law in the circumstances." (citation omitted)). Plaintiff has not cited any precedent that would compel the conclusion that the officers violated federal law by not administering Narcan to Mr. Cantrell. Because there was no constitutional violation and no violation of clearly established law, Defendants are entitled to qualified immunity.

**C.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM**

As discussed in Defendants' Motion for Summary Judgment and in this Reply, none of the individual defendants violated the Constitution. Accordingly, Plaintiff's *Monell* claim fails as a matter of law: "There can be no liability under *Monell* without an underlying constitutional violation." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019).

10

Plaintiffs have abandoned any *Monell* claim based on policies, procedures or lack of training. Instead, Plaintiffs attempt to argue that Scioto County is liable because it failed to investigate this incident and, therefore, argues Plaintiff, the County ratified unconstitutional behavior. For the moment, we will assume that there was no meaningful investigation. Plaintiff still loses.

Because municipal liability requires an unconstitutional "policy" or "custom," the Sixth Circuit holds that an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice. *See Burgess v. Fischer*, 735 F.3d 462, 478-79 (6th Cir. 2013); *Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005). As a result, "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017). That is, "there must be multiple earlier inadequate investigations and they must concern comparable claims." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019). In *Leach v. Shelby Cnty. Sheriff*, for example, "there was a record of approximately 14 other instances of similar abuse in a two-year period." *Meirs v. Ottawa County*, 821 F. App'x 445, 2020 U.S. App. LEXIS 21957, 2020 WL 3956857, at *5 (6th Cir. July 13, 2020) (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989)).

This requirement (that there be multiple failures to investigate) also follows from § 1983's causation element. To protect against *respondeat superior* liability, the Supreme Court has held that § 1983 imposes a "rigorous" causation standard where, as here, a plaintiff seeks to hold a local entity liable for its employee's actions. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A plaintiff must show that the *entity's* unconstitutional custom—not just the *employee's* unconstitutional action—caused the plaintiff's

11

injury. *Id.* at 404. In this case's context, there must be a "link between" the local entity's failure to investigate and the plaintiff's injury. *Meirs*, 2020 U.S. App. LEXIS 21957, 2020 WL 3956857, at *5; *see Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017). And an entity's failure to investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains. Because the injury will have already occurred by the time of the specific investigation, "there can be no causation" from that single failure to investigate. *David*, 706 F. App'x at 853. As the Eleventh Circuit noted, "a single failure to investigate an incident cannot have caused that incident." *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015); *cf. Ellis ex rel. Pendergrass v Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n.5 (6th Cir. 2006). A series of investigative failures before the plaintiff's injury, by contrast, might at least suggest that the local entity's custom led to the employee's harmful action in the plaintiff's own case. *See Brown*, 520 U.S. at 407.

Under this framework, Plaintiff lacks sufficient evidence for her failure-to-investigate claim against Scioto County. Plaintiff challenges only a single failure to investigate her own deliberate indifference claim and has made no attempt to "show several separate instances of the alleged rights violation." *Thomas*, 398 F.3d at 434. No matter the adequacy of Scioto County's specific investigation, Plaintiff has not identified evidence from which a reasonable jury could find that the Scioto County Sheriff's Office has a "policy" or "custom" of systematically failing to investigate deliberate indifference claims. *Stewart*, 788 F. App'x at 344. Not only that, she has not explained how the post-incident failure to investigate her one allegation could have caused a constitutional violation in this incident. *David*, 706 F. App'x at 853.

Lastly, the investigation was not a "sham" as Plaintiff claims. Until this case, nobody had made a claim that any officer had violated Cory Cantrell's constitutional rights. There was no

reason to do an investigation. The investigation done after Cory Cantrell's death was a criminal investigation to determine who killed Cory Cantrell. That investigation led to the indictment and conviction of Perry Steele. Accordingly, it is difficult to argue that Detective Conkel failed to do an adequate investigation.

For the foregoing additional reasons all Defendants are entitled to summary judgment on all of Plaintiff's federal and state law claims.

Respectfully submitted,

/s/ Andrew N. Yosowitz
Andrew N. Yosowitz         (0075306)
E-mail: ayosowitz@teetorlaw.com
**Teetor Westfall, LLC**
200 E. Campus View Blvd., Suite 200
Columbus, Ohio 43215
Tel: 614-412-4000; Fax: 614-412-9012
*Attorney for Defendants Scioto County, Scottie Powell, Bryan Davis, Cathy Coleman, David Thoroughman, Damon Roberts, Christopher Boggs, Rebecca Davila, Casie Marcum, Devyn McNeil and Kenneth Aldridge*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Andrew N. Yosowitz
Andrew N. Yosowitz         (0075306)